T. Jason Wood, Esq.
Idaho State Bar No. 5016
WOOD LAW GROUP, PC
1846 1st Street #1012
Idaho Falls, ID  83402
Telephone: (208) 497-0400
Fax: (208) 932-4380
Email: jason@woodlaw.net
*Attorneys for Plaintiff*

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAY A. JORGENSEN,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF IDAHO FALLS, RYAN PICARD, ETHAN LOVE, SPENCER WOOD, S. NAGLE, B. YORGESON, and JOHN DOES I - V,<br><br>        Defendants. | Case No. 1:25-cv-00140<br><br>**MOTION TO SET BOND<br>(I.C. § 6-610)** |

Pursuant to Idaho Code § 6-610, Plaintiff Jay. A. Jorgensen, by and through his attorneys, T. Jason Wood of WOOD LAW GROUP, PC, hereby moves for the Court's Order setting the amount of the pre-complaint bond required to be posted in this matter in a sum no greater than $500, to secure payment of the defendant officers' reasonable attorney fees in the unlikely event that (1) they prevail in the underlying action to be filed, *and* (2) are able to establish that Plaintiff pursued the underlying action in "bad faith," as required by Idaho Code Idaho Code § 6–918A.

1 -     MOTION TO SET BOND (I.C. § 6-610)

Attached hereto is a proposed *Complaint and Demand for Jury Trial* which Plaintiff intends to file immediately upon entry of the Court's Order waiving or setting a bond in this matter.

This motion is supported by Plaintiff's Declaration of Indigence, a Declaration of Plaintiff's counsel, and memorandum of points and authorities, which are filed herewith.

Oral argument is requested if the Court is disinclined to grant the motion on Plaintiff's written submission.

RESPECTFULLY REQUESTED this 13th day of March, 2025.

WOOD LAW GROUP, PC

By:    /s/_____
       T. Jason Wood, Esq.

T. Jason Wood, ISB No. 5016
WOOD LAW GROUP, PC
1846 1st Street #1012
Idaho Falls, ID  83402
Telephone: (208) 497-0400
Fax: (208) 932-4380
Email: jason@woodlaw.net
*Attorneys for Plaintiff*

IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| JAY A. JORGENSEN,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF IDAHO FALLS, RYAN PICARD, ETHAN LOVE, SPENCER WOOD, S. NAGLE, B. YORGESON, and JOHN DOES I - V,<br><br>  Defendants. | Case No. 1:25-cv-00140<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

JAY A. JORGENSEN, for cause of action against the above-named defendants, alleges as follows:

1. This is an action for money damages, declaratory and injunctive relief arising under 42 U.S.C. §1983, under the First, Fourth and Fourteenth Amendments to the United States Constitution, the Idaho Tort Claims Act (ITCA) and Idaho common law.

2. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 28 U.S.C. 1343(a)(3), 1343(a)(4) and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b).

1 - COMPLAINT AND DEMAND FOR JURY TRIAL

4.      Jorgensen is currently a resident of the Jefferson County, Idaho, and founder and CEO of Geobitmine, an Idaho limited liability company he founded and of which he is CEO, having developed a patent-pending process to repurpose waste heat from data centers and Bitcoin mining operations to heat hydroponic greenhouses, thereby redefining the future of farming.

5.      Defendant City of Idaho Falls, at all times material hereto, was a political subdivision of the State of Idaho, acting pursuant to established county policies, procedures, customs, and practices.

6.      Defendant Ryan Picard ("Sgt. Picard") was, at all times material hereto, employed as a law enforcement officer with the rank of Sergeant by the City of Idaho Falls, acting in his individual capacity within the court and scope of his employment.

7.      Defendant Ethan Love ("Offc. Love") was, at all times material hereto, employed as a law enforcement officer by defendant City of Idaho Falls, acting in his individual capacity within the court and scope of his employment.

8.      Defendant Spencer Wood ("Offc. Wood") was, at all times material hereto, employed as a law enforcement officer by defendant City of Idaho Falls, acting in his individual capacity within the court and scope of his employment.

9.      Defendant S. Nagle ("Offc. Nagle") was, at all times material hereto, employed as a law enforcement officer by defendant City of Idaho Falls, acting in his individual capacity within the court and scope of his employment.

10.     Defendant B. Yorgeson ("Offc. Yorgeson") was, at all times material hereto, employed as a law enforcement officer by defendant City of Idaho Falls, acting in her individual capacity within the court and scope of her employment.

2 -     COMPLAINT AND DEMAND FOR JURY TRIAL

11.	On October 30, 2024, in Idaho Falls, Idaho, Jorgensen was entertaining potential investors for a new GeoBitmine modular sustainable data center in Idaho Falls, integrated with a hydroponic greenhouse, with the intent of using it as a model for expansion throughout the region, driving economic growth and sustainable, food production.

12.	At approximately 1:00 a.m. (October 31), Jorgensen and two investors decided to end their evening together with a slice of pizza at the Pie Hole in downtown Idaho Falls. When Jorgensen and his companions arrived at the entrance of the Pie Hole, they observed that it was still open for business and entered.

13.	Shortly after entering the establishment, they were met by a female employee who said the restaurant was about to close for the evening.  Jorgensen offered to pay $100 if he and his companions could sit and eat one slice of pizza each, that had already been baked but which had not been served and would otherwise be thrown away.  The hostess happily consented and invited Jorgensen and his companions to take a seat, where they were served and began eating their pizza.

14.	Unknown to Jorgensen and his companions, while they were eating the hostess contacted the Idaho Falls Police (IFPD) and falsely reported that Jorgensen and his companions had entered after closing time, refused several demands to leave, and were drunk and disorderly.  In truth, they were quietly talking and eating their pizza together the express consent of the Pie Hole personnel.

15.	When the defendant IFPD officers identified above arrived, they immediately ordered Jorgensen and his companions to leave and treated them like common criminals.  Jorgensen and his companions complied, explaining that Pie Hole's report to the IFPD was false.

16.     After Jorgensen and his companions exited the premises there was further conversation with the defendant officers, in which Jorgensen and his companions reasserted their innocence in a passive, non-threatening manner.

17.     Nevertheless, defendant Picard, the officer in charge on the scene, took personal offense at Jorgensen's comments, the worst of which was a statement to one of his companions that the police were "useless," which Picard characterized later in his report as "degrading towards officers."

18.     Immediately after Jorgensen's "useless" comment, Picard suddenly became enraged, unleashed a loud blue streak of profanity and threats at Jorgensen, and without warning or provocation exploded in a brutal attack on Jorgensen, body-slammed him to the ground, and, with the assistance of the other defendant officers, beat Jorgensen senseless.

19.     The other defendant officers failed to intercede or prevent Picard's unlawful brutality but instead actively assisted and participated in it.

20.     The defendant police officers then worked together to handcuff and falsely arrest Jorgensen.

21.     These events at Pie Hole were recorded via body camera worn by each of the defendant officers, which recordings verify the foregoing account and refute portions of the officers' incident reports.

22.     The defendant officers did not possess probable cause or even reasonable suspicion of any crime or emergency to justify their seizure of Jorgensen.

23.     The force exerted by the defendant officers in seizing and falsely arresting Jorgensen was unreasonable and excessive.

24.     Jorgensen did not consent to being seized and restrained by the defendant officers as alleged.

25.     Before transporting Jorgensen to jail, the defendant officerss took him to the hospital to treat the injuries they inflicted upon him, where they gave false and misleading information to the hospital staff and otherwise applied undue influence or pressure on the hospital staff to humiliate Jorgensen, to doubt his integrity, to downplay his injuries, and to treat him as a common criminal.

26.     At the hospital the defendant officers refused Jorgensen's requests to move his handcuffs to his front, thereby preventing hospital staff from accurately diagnosing or properly treating his injuries.

27.     The defendant officers then caused Jorgensen to be transported, booked into and falsely imprisoned in Bonneville County Jail, and falsely and maliciously prosecuted for the crimes of Assault and Battery on Officers (I.C. § 18-915) and Seizures-Resisting or Obstructing Officers (I.C. § 18-705).

28.     While falsely imprisoned in the Bonneville County Jail, Jorgensen suffered further abuse at the hands of the jailers as a direct, foreseeable and proximate result of the defendants' officers' false arrest and imprisonment of Jorgensen.

29.     After falsely imprisoning Jorgensen, the individual defendants each knowingly, deliberately, and maliciously fabricated and falsified evidence in their respective sworn case reports or affidavits in order to justify their unlawful treatment of Jorgensen, and to aid and abet their false and excessively brutal arrest and false imprisonment of Jorgensen.

30.     All the tortious conduct of the defendant officers outlined above was performed with malice and ill will toward Complainant, pursuant to official IFPD custom and procedure, in retaliation and as punishment for Complainant's perceived "contempt of cop."

5 -     COMPLAINT AND DEMAND FOR JURY TRIAL

31.     But for Jorgensen's exercise of his First Amendment right of free speech as alleged above, the defendant officers would not have arrested, used excessive force against, criminally charged, prosecuted, and imprisoned Jorgensen.

32.     The criminal charges against Jorgensen were ultimately dismissed for lack of evidence.

33.     The defendant officers' seizure of Jorgensen as alleged above was in clear violation of his rights guaranteed by the First and Fourth Amendments to the United States Constitution, which apply to the State of Idaho pursuant to the Due Process Clause of the Fourteenth Amendment, and by Idaho common law.

34.     The defendant officers' deliberate fabrication of evidence was in clear violation of his rights guaranteed by the Fourth Amendment, which applies to the State of Idaho pursuant to the Due Process Clause of the Fourteenth Amendment, directly under the Due Process Clause of the Fourteenth Amendment, and by Idaho common law.

35.     The violations of Jorgensen's constitutional rights as set forth above were committed pursuant to and were caused by official City of Idaho Falls policies permitting and encouraging its officers to forcibly seize persons without probable cause or reasonable suspicion of a crime or emergency and for "contempt of cop" or otherwise for insulting its officers, and for charging and prosecuting persons for assault on or resisting/obstructing an officer without legal justification in order to cover their unlawful seizures.

36.     The City of Idaho Falls negligently failed to properly or adequately train, direct, manage, or supervise its officers in the circumstances in which a seizure of a subject may be made, in violation of Idaho common law.

37.     As a direct and proximate result of the defendants' unlawful conduct and policies as alleged above, Jorgensen has suffered and incurred substantial past and ongoing special and general damages in amounts to be proven at trial.

38.     The defendants' conduct and policies as alleged above were malicious, wanton, oppressive, and/or in reckless disregard of Plaintiff's federally protected rights, for which they entitled to an award of punitive damages under 42 U.S.C. §1983.

39.     The individual defendants' unlawful acts and omissions as alleged above were committed with malice and criminal intent within the meaning of Idaho Code § 6-904.

40.     The individual defendants' conduct as alleged above was reckless within the meaning of Idaho Code § 6-1603, and extreme and outrageous within the meaning of Idaho Code § 6-1604, constituting an extreme deviation from reasonable standards of conduct.

41.     Pursuant to 28 U.S.C. §1988, Plaintiff is entitled to recover his reasonable attorney fees incurred in this matter.

42.     Plaintiff demands trial by jury.

WHEREFORE, Plaintiff prays for the following judgment and relief against the defendants, jointly and severally, as follows:

1.     For a judicial declaration that the defendants' conduct and policies were in violation of Plaintiff's rights secured by the United States Constitution.

2.     For an appropriate injuction and decree against similar constitutional violations in the future;

3.     For an award for his general and special damages in amounts to be proven at trial.

4.     For an award of punitive damages pursuant to federal law in amounts to be proven at trial.

5.     For an award of his reasonable attorney fees.

6.     For costs incurred in prosecuting this action.

7.     For such further relief as this Court deems just.

DATED this 13th day of March, 2025.

WOOD LAW GROUP, PC

By:  _____
     T. Jason Wood, Esq.